

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

FILED
SCRANTON

NOV - 1 2002

PER _____
DEPUTY CLERK

| | | |
|---|---|---|
| DIAMOND TRIUMPH AUTO GLASS, INC., | * | |
| Plaintiff, | * | Case No. 3:CV-02-0514 |
| vs. | * | Judge James M. Munley |
| SAFELITE GLASS CORPORATION, | * | Jury Trial Demanded |
| Defendant. | * | |

**COUNTERCLAIM OF**
**DEFENDANT SAFELITE GLASS CORPORATION**

Defendant Safelite Glass Corp. ("Safelite"), for its Counterclaim against Diamond Triumph Auto Glass, Inc. ("Diamond"), alleges and states:

1. Jurisdiction is proper in this Court pursuant to 28 U.S.C. §1331, federal question jurisdiction, based upon allegations that Diamond's conduct has violated the Lanham Act, 15 U.S.C. §1125(a)(1)(b). The Court has supplemental jurisdiction of Safelite's state law claims against Diamond pursuant to 28 U.S.C. §1367.

2. Venue is proper in this district pursuant to 28 U.S.C. §1391(b) and (c) because Diamond is a corporation doing business in this district.

3. Safelite is a Delaware corporation in the business of repairing and replacing automobile glass throughout the United States.

4. Diamond is a Delaware corporation in the business of repairing and replacing automobile glass throughout the United States.

5. Safelite manufactures windshields, maintains retail operations for auto glass repair and replacement, maintains Network Participation Agreements with glass shops participating in its network, and operates one or more national telephone call centers at which, among other activities, Safelite takes first notice of loss calls from insureds, claims personnel, insurance call centers, or agents of various automobile insurance companies around the United States. Some insurance clients for which Safelite takes first notice of loss are among the largest automobile insurance companies around the United States ("Insurance Clients"). In addition to services offered to Insurance Clients and their insureds through call centers, Safelite contracts with some Insurance Clients to process auto glass claims payments. Many of these Safelite services are offered pursuant to contracts between Safelite and its Insurance Clients. Safelite's ability to generate revenue depends upon Safelite maintaining its business relationship and contracts with its Insurance Clients.

6. Safelite has expended extraordinary time, money and resources developing goodwill with its Insurance Clients and in building its national reputation in the auto glass repair and replacement industry. Safelite's existing goodwill with its Insurance Clients and national reputation in the auto glass repair and replacement industry are essential to Safelite's business success and financial well-being.

7. Diamond competes directly with Safelite in the business of auto glass repair and replacement and related services throughout the United States.

8. With the intent to damage the reputation of Safelite and to compete unfairly and unlawfully against Safelite, Diamond has engaged and continues to engage in publishing certain false and defamatory statements about Safelite to automobile insurance companies that are Safelite's clients.

9. Diamond has written to Safelite's Insurance Clients, and upon information and belief, other potential insurance clients, accusing Safelite of illegal and aggressive steering tactics and outright theft of jobs targeted for Diamond, and has used these false accusations to promote its own services, soliciting commercial relationships between Diamond and Safelite's Insurance Clients and potential insurance clients.

10. For example, on June 6, 2002, Diamond's Senior Vice President of Sales sent letters to Erie Insurance Company in Erie, Pennsylvania, to Kemper Insurance Company in Woodland Park, Colorado, and to North Pacific Insurance Company in Portland, Oregon (the "Letters"), all of which are Safelite's Insurance Clients, for the purpose of defaming Safelite and in an attempt to take business away from Safelite.

11. In the Letters to Safelite's Insurance Clients, referred to in paragraph 9 herein, Diamond has falsely stated that "Safelite's tactics have not stopped at aggressive steering tactics, but have escalated to *outright theft of jobs* targeted for Diamond Triumph." (emphasis added). The Letters also request that Safelite's Insurance Clients contact Safelite and require that Safelite expend time and money to make internal changes that will allegedly benefit Diamond. The only basis for these requested "changes" is Diamond's publication of false and defamatory statements about Safelite to Safelite's Insurance Clients.

12. Upon information and belief, Diamond has made numerous similar false publications to other Safelite Insurance Clients and others in the auto glass repair and

3

replacement industry. Upon information and belief, Diamond's unlawful practice of communicating false information about Safelite to Safelite's Insurance Clients and others in the auto glass repair and replacement industry is continuing.

## COUNT I – DEFAMATION PER SE

13. Safelite incorporates all preceding paragraphs of its Counterclaim as if fully restated herein.

14. The statements published by Diamond to Safelite's Insurance Clients and others in the auto glass repair and replacement industry are false and defamatory, have brought Safelite into ridicule and contempt, have caused Safelite to expend substantial money, time and resources responding to the false statements, and have injured Safelite's goodwill and business reputation throughout the country.

15. The statements published by Diamond to Safelite's Insurance Clients and others in the auto glass repair and replacement industry are intentionally and maliciously published by Diamond with knowledge of the falsity of the publication or with reckless disregard to the truth, are intended to unlawfully affect competition with Safelite, and are intended to injure Safelite's business reputation with its Insurance Clients and in the auto glass repair and replacement industry.

16. At all relevant times, Diamond was and is aware of the falsity of the statements made about Safelite to Safelite's Insurance Clients and others in the auto glass repair and replacement industry.

17. Upon information and belief, Diamond's intentional and malicious publication of false information to Safelite's Insurance Clients and others in the auto glass repair and replacement industry is ongoing.

18. Diamond's intentional and malicious publication of false statements to Safelite's Insurance Clients and others in the auto glass repair and replacement industry is without privilege and does not arise in the context of communications preliminary to a proposed judicial proceeding, or in the institution of or during the course and as a part of, a judicial proceeding involving Diamond or Safelite.

19. Diamond's intentional and malicious publications constitute defamation per se due to the nature of the false statements made by Diamond, which accuse Safelite of theft and other illegal or improper conduct, and due to Diamond's intentional and malicious publication of those false accusations to Safelite's Insurance Clients and others in the auto glass repair and replacement industry.

20. The false publications by Diamond to Safelite's Insurance Clients and others in the auto glass repair and replacement industry were made and are being made with malice, ill will or intentional disregard for the rights of Safelite and are intended to injure Safelite's goodwill and business reputation and to compete unfairly with Safelite in the auto glass repair and replacement industry.

21. As a proximate result of Diamond's false publications about Safelite, Safelite has suffered loss of earnings to its business, injury to goodwill and its business reputation, and has been otherwise damaged. The ongoing nature of Diamond's intentional and malicious acts is causing irreparable harm to Safelite's goodwill and business reputation and Safelite continues to incur damages due to Diamond's unlawful acts.

**COUNT II – FEDERAL UNFAIR COMPETITION (15 U.S.C. § 1125(a)(1)(B))**

22. Safelite incorporates all preceding paragraphs of its Counterclaim as if fully restated herein.

5

23. Diamond has published material to Safelite's Insurance Clients, and upon information and belief, to others in the auto glass repair and replacement industry, accusing Safelite of illegal and aggressive steering tactics and outright theft of jobs targeted for Diamond, and is using these false accusations to promote its own services, soliciting commercial relationships between Diamond and Safelite's Insurance Clients and prospective insurance clients.

24. Diamond's accusations that Safelite engages in illegal and aggressive steering tactics and theft are false and misleading. These false and misleading descriptions and representations of fact misrepresent the nature, characteristics and quality of Safelite's commercial activities, are intended to cause damage to Safelite, and are causing or are likely to cause damage to Safelite.

25. Diamond's false and misleading descriptions and representations of fact are likely to damage and/or are damaging Safelite's goodwill, as well as the reputation Safelite has developed in connection with the provision of its payment services and call center services.

26. Diamond's aforesaid acts are in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1025(a), in that Diamond uses in commerce, in connection with services, and in commercial advertising or promotion, false and misleading descriptions and/or representations of fact that misrepresent the nature, characteristics and/or qualities of Safelite's commercial activities.

27. Diamond's aforesaid acts are made maliciously, willfully and in bad faith.

28. As a proximate result of Diamond's false publications about Safelite, Safelite has suffered loss of earnings to its business, injury to goodwill and its business reputation,

and has been otherwise damaged. The ongoing nature of Diamond's intentional and malicious acts is causing irreparable harm to Safelite's goodwill and business reputation and Safelite continues to incur damages due to Diamond's unlawful acts.

29. Safelite has no adequate remedy at law and if Diamond's activities are not enjoined is likely to and will continue to suffer irreparable harm and injury to its goodwill and reputation.

**PRAYER FOR RELIEF**

WHEREFORE, Safelite respectfully prays that this Court:

1. Award Safelite compensatory damages in an amount in excess of $75,000.00, punitive damages in an amount to be determined at trial, treble damages, pre- and post-judgment interest, and its costs and attorneys' fees associated with this action.

2. Issue a permanent injunction restraining, enjoining and prohibiting Diamond, its agents, servants, employees, officers, attorneys, successors and assigns, all persons, firms and corporations acting in concert or participation with Diamond or on Diamond's behalf, and all those receiving actual notice of this order from:

> A. communicating to any of Safelite's Insurance Clients, existing customers, or any other entity or individual, any false description of fact or false representation of fact which misrepresents the nature, characteristics, qualities or geographic origin of Safelite's goods, services or commercial activities; and
>
> B. communicating to any of Safelite's existing customers, or any other entity or individual, any misleading description of fact or misleading

representation of fact which misrepresents the nature, characteristics, qualities or geographic origin of Safelite's goods, services or commercial activities.

3. Grant Safelite such other and further relief as this Court deems to be reasonable, necessary and just.

Respectfully submitted,

*Charles A. Shea*

Charles A. Shea, III, Esquire
387 Wyoming Avenue
Kingston, PA 18704
(570) 288-5020

Counsel for Defendant Safelite Glass Corp.

OF COUNSEL:
Robert M. Kincaid, Jr.
Elizabeth A. McNellie
Elizabeth L. Hendershot
Paul D. Ellis
BAKER & HOSTETLER LLP
65 East State Street, Suite 2100
Columbus, Ohio 43215
(614) 228-1541
(614) 462-2616 FAX