UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DIAMOND TRIUMPH AUTO GLASS, INC., | : | |
| Plaintiff, | : | No. 3:CV-02-0514 |
| v. | : | |
| SAFELITE GLASS CORPORATION. | : | (James J. Munley, U.S.D.J.) |
| Defendants. | : | |

### PROGRESSIVE MUTUAL CASUALTY COMPANY'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO INTERVENE

**I.     STATEMENT OF FACTS**

Progressive Casualty Insurance Company ("Progressive"), by and through its counsel, Thorp Reed & Armstrong, LLP, hereby files this Memorandum of Law in Support of its Motion to Intervene and avers as follows:

Progressive recently learned that a number of documents it placed in the hands of Defendant Safelite Glass Corp. ("Safelite") for business purposes have become the object of Plaintiff, Diamond Triumph Auto Glass, Inc.'s ("Diamond") Request for Production of Documents. Because these documents contain proprietary and otherwise confidential information belonging to Progressive, the disclosure of which to a competitor would harm Progressive and the privacy interests of its insureds.

Progressive hereby respectfully requests this Court's permission to intervene for the limited purpose of seeking an order under Federal Rule of Civil Procedure 26(c)(2) and (7), reasonably tailored to limit the unnecessary dissemination and use of this information.

Draft 2/11/2003

The documents Progressive wishes to protect (to the extent they were provided by Progressive or generated by Progressive's business with Safelite), are subject to the information requested in Diamond's First Request for Production of Documents ("Diamond's Request"). *See*, copy of Diamond's Request attached hereto as Exhibit "A". The materials that would affect Progressive include the following:

1. Provider Agreement and related documents between Progressive and Safelite which contains a confidentiality provision and includes pricing information.

2. Safelite e-mails to network and other shops about any applicable pricing or network pricing and insurance company to Safelite communications about network pricing.

3. Safelite Network Operations personnel's notes and research about alleged short pays.

4. Some Safelite Network correspondence about alleged short pays, researching reasons for short pays.

5. Communications about script approval/script changes. Procedure and training manuals for call center(s).

6. Agent utilization reports.

7. Internal call center memos about script changes, new procedures, new computer screens, compliance with call center procedures.

8. Script for call center(s) first notice of loss calls. Some historical scripts.

9. Daily call center performance reports from 1999 to September 2002.

10. Some complaints from customer service tracking system concerning Diamond. Some miscellaneous complaints from insurance customers or from Progressive that were reported through Safelite strategic account managers.

11. Some correspondence and amendments relating to contracts.

2

Draft 2/11/2003

12. Some Safelite quarterly reviews; some strategic account manager presentations from Safelite.

13. Safelite conducted survey about agents' use of the glass programs and survey results.

14. Tapes of first notice of loss calls that the call center has received over approximately the last year.

15. Detailed information about Progressive's insureds' glass claims and any related databases or documents.

## II. Legal Argument

### A. Permissive intervention under Rule 24(b) is the appropriate vehicle for allowing a non-party to bring to the Court's attention its view as to what should be contained in a protective order.

Fed. R. Civ. P. 24(b) states in relevant part:

**Permissive Intervention.** Upon timely application anyone may be permitted to intervene in an action: (1) when a statute of the United States confers a conditional right to intervene; or (2) when an applicant's claim or defense and the main action have a question of law or fact in common.

The Third Circuit has held that under Rule 24(b)(2), "the procedural device of permissive intervention is appropriately used to enable a litigant who was not an original party to an action to challenge protective or confidentiality orders entered in that action." Pansy v. Borough of Stroudsburg, 23 F.3d 772, 778 (3rd Cir. 1994) [citations omitted]. Although Pansy and the authorities cited in that case dealt with intervenors who sought information protected by a previous court order, the District Court in United States v. Dentsply Int'l, 187 F.R.D. 152, *157* (D.Del. 1999), applied Pansy to allow a business competitor of an antitrust defendant to intervene "for purposes of bringing to the Court's attention its view with respect to what should be contained in [a] protective order" Id., citing, Pansy, 23 F.3d at 778 [citations omitted].

3

P0019291.RTF

Draft 2/11/2003

When there is no statutory right to intervene, Rule 24(b)(2) still permits a court to allow intervention "when an applicant's claim or defense and the main action have a question of law or fact in common." At issue in <u>Pansy</u> was whether the applicant's claim for relaxing a protective order and the main action had any common question of fact or law. The applicant was a newspaper seeking access to details of a court-approved confidential civil rights settlement agreement between a plaintiff and borough police. The newspaper had no standing to intervene in litigating the merits of the case. On this basis, the District Court denied intervention. The Third Circuit reversed, holding that where "a party seeks to intervene only for the purpose of modifying a protective order, the intervenor does not have to claim a legal theory in common with the parties or have an independent jurisdictional basis for entering the suit." <u>Pansy</u>, 23 F.3d at 778.

Contrasting protective order cases with those in which the proposed intervenor seeks to litigate the parties' claims on the merits, the Court in <u>Pansy</u> stated "that the intervenors' claim involve..., the same legal theory that was raised in the main action is not required when intervenors are not becoming parties to the litigation. There is no reason to require such a strong nexus of fact or law when a party seeks to intervene only for the purpose of modifying a protective order." <u>Pansy</u>, 23 F.3d at 778, <u>quoting, Beckman Indust., Inc. v. International Ins. Co.</u>, 966 F.2d 470, 474 (9th Cir.), <u>cert. denied</u>, 506 U.S. 868 (1992). Because a Court already controls discovery between the parties before it, a non-party seeking to intervene for the purpose of modifying that discovery sufficiently meets the commonality requirement of Rule 24(b)(2) to intervene for that limited purpose. 23 F.3d at 778.

In <u>Dentsply</u>, the Justice Department served Civil Investigative Demands (CD's) on

4

**Draft 2/11/2003**

numerous competitors of the antitrust defendant. The CD's led to the receipt of confidential and proprietary information from these companies. The intervenor was a business that later acquired two of the businesses. Information it sought to protect included sales and marketing plans, strategic plans, financial forecasts, margin information, amounts spent on specific product areas, plans for expansion into markets, and deals struck with other manufacturers. The intervenor "spelled out explicitly with great detail" in an affidavit how "allowing Dentsply access to the materials would give Dentsply competitive advantage in multiple ways." Dentsply, 187 F.R.D. at 157. The Court therefore allowed the non-party to intervene "for purposes of bringing to the court's attention its view with respect to what should be contained in the protective order." Id.

The present case is very similar to Dentsply in that Progressive seeks to intervene only for the purpose of moving for a protective order. At least two other parties to this action already agree that some form of protective order is necessary. As in Dentsply, the information Progressive seeks to protect is proprietary, and the entities from which Progressive seeks to protect the information are competitors. Accordingly, this Court may also rely upon the principles articulated by the Third Circuit in Pansy, and permit limited intervention in the case before it.

### B.     Progressive's application is timely.

Another requirement for permissive intervention under Rule 24(b) is that the application be "timely." In Commonwealth of Pa. v. Rizzo, 530 F.2d 501 (3rd Cir.) cert. denied, 426 U.S. 921 (1976), the Court held that there were three factors to consider with regard to timeliness: (1) how far the proceedings have gone when the movant seeks to intervene; (2) prejudice which delay might cause to other parties; and (3) the reason for the delay. In United States v. South Bend Community School Corp., 710 F.2d 394, 396 (7th Cir. 1083), cert. denied, 466 U.S. 926

P0019291.RTF

**Draft 2/11/2003**

(1984), the Court held that timeliness was a matter of reasonableness and potential intervenors need to be reasonably diligent in learning of a suit that might affect their rights, and upon so learning, they need to act reasonably promptly.

Progressive has applied for intervention in a timely manner. There will be little or no prejudice to Diamond, because this litigation is still early in the discovery phase, and no deadline for production has passed with regard to the material in question.

### Conclusion

For the foregoing reasons, Progressive respectfully requests permission to intervene in the present action for the limited purpose of presenting to the Court a motion for a protective order under Fed. R. Civ. P. 26(c).

Respectfully Submitted:

Dated: February 11, 2003

C. James Zeszutek, Esquire
Barry L. Cohen, Esquire
THORP REED & ARMSTRONG, LLP
2005 Market Street, Suite 2010
Philadelphia, PA  19103
Tel:   (215) 563-6711
Fax:   (215) 563-6816

Attorney for Progressive Mutual
Casualty Company

6

## CERTIFICATE OF SERVICE

I, Barry L. Cohen, Esquire, do hereby certify that a true and correct copy of Progressive Casualty Insurance Company's Motion to Intervene and Brief in Support of Motion to Intervene, was served upon all parties by United States Mail, mail on February **11**, 2003 at the following addresses:

>Richard Bishop, Esquire/James Shoemaker, Esquire
>HOURIGAN, KLUGER & QUINN
>Suite 200
>434 Lackawanna Avenue
>Scranton, PA 18503
>
>Kathleen A. Walsh, Esquire/James J. Wilson, Esquire
>MARSHALL, DENNEHEY, WARNER, COLEMAN & GOGGIN
>401 Adams Avenue, Suite 400
>Scranton, PA 18510
>
>Paul W. Minnich, Esquire
>BARLEY & SNYDER
>100 East Market Street
>P.O. Box 15012
>York, PA 17405-7012
>
>Charles A. Shea, III, Esquire
>387 Wyoming Avenue
>Kingston, PA 18704
>
>Elizabeth L. Hendershot/Robert M. Kincaid, Jr.,
>BAKER & HOSTELETER, LLP
>65 East State Street
>Suite 2100
>Columbus, OH 53215

By: _____
Barry L. Cohen, Esquire