## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DIAMOND TRIUMPH AUTO GLASS, INC.,** | : | No. 3:02cv514 |
| Plaintiff | : | (Judge Munley) |
| v. | : | |
| **SAFELITE GLASS CORPORATION,** | : | |
| Defendant | : | |

::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

### MEMORANDUM

Presently before the court is plaintiff's motion for reconsideration (Doc. 464) of our order granting in part and denying in part both parties' motions for summary judgment (Doc. 463). The matter has been fully briefed and is ripe for decision.

**Case Background**

The parties in this dispute are competing automobile glass companies. Both repair and replace damaged vehicle glass, largely for insured individuals. The dispute centers around the business operations of and agreements between Diamond Triumph Auto Glass, Inc. (Diamond) and Safelite Glass Corporation (Safelite). Safelite served as automobile glass claims administrator for more than 100 insurance companies from January 1, 1999 through June 30, 2004. As part of its repair business, Safelite leased and maintained telephone numbers policyholders called to make claims, maintained call centers to answer those calls, provided policyholders and agents information on coverage during such calls, received and

recorded information from claimants, answered policy questions for callers, administered scripts worked out between Safelite and individual insurance companies which guided the interaction between policyholders and call center workers, helped schedule service from glass providers and helped process the invoices submitted by policyholders after service to see that they met approved policy guidelines. Safelite also arranged guaranteed maximum prices with each insurance company and warrantied its product and services with the companies.

Safelite's shops did not perform every repair contracted for by insurance companies. Safelite presided over a repair network that included 200 Safelite shops and 400 Safelite mobile repair units, but which also included 10,500 affiliated shops. These affiliated shops became part of Safelite's network by signing contracts called Network Affiliate Participation Agreements. Those agreements required that shops perform work at or below the prices guaranteed to insurance companies by Safelite, and that they meet quality standards Safelite established. In return, Safelite agreed to refer policyholders to the affiliates for repairs. The agreements did not guarantee the affiliates a particular volume of calls, but affiliates did not have to pay a fee to associate themselves with Safelite. If a policyholder expressed a preference for a non-affiliated glass provider, Safelite's employees warned the caller that Safelite could not guarantee the non-affiliate's work or ensure that prices would not exceed coverage. Diamond entered into such an affiliate agreement on April 1, 2000. The company remained part of the Safelite network until voluntarily terminating the

agreement on April 1, 2002.

After ending its affiliation with Safelite in April, 2002, Diamond sent at least fifteen different insurance companies letters complaining about the way that Safelite administered the insurance programs. The letters claimed that Safelite made false statements to policyholders about Diamond's products and services, and that Safelite used its claims administrators to direct customers to Safelite shops. In June 2002, Diamond followed up these original letters with another set of complaints addressed to insurance companies, claiming that Safelite had a policy of stealing jobs. From 2002 to 2005, Diamond also attempted to promote its business by providing benefits to insurance agents who referred policyholders to Diamond. The company spent more than $4.5 million during those years on gift certificates and gasoline cards for agents.

On March 29, 2002, Diamond filed a complaint that initiated the instant case. Diamond filed a First Amended Complaint on May 7, 2002. Following the filing of a partial motion for summary judgment, Diamond filed a Second Amended complaint on February 18, 2004. That complaint contains five counts stemming from Safelite's administration of insurance claims. Diamond alleges that Safelite breached the network agreements between the parties, violated state consumer protection statutes by improperly influencing consumer decisions in the claims process, tortiously interfered with Diamond's business relationships with policyholders, engaged in common law disparagement of Diamond and committed false advertising

under the Lanham Act, 15 U.S.C. § 1125(a)(1).  On March 8, 2004, Safelite filed seven counterclaims related to letters that Diamond sent to insurance companies after leaving the Safelite network and Diamond's use of gift cards to influence consumer decisions.

In August 2005, both sides filed motions for summary judgment.  On July 31, 2006, we issued a decision that granted the parties' motions in part and denied them in part.  (See Memorandum and Order (Doc. 463)).  We granted Safelite summary judgment on several counts in Diamond's complaint, including Count I, breach of contract; Count II, state deceptive trade practices; and Count V, Lanham Act violations.  We also granted summary judgment on Count IV, disparagement, to the extent that scripted warnings provided to insured parties who contacted Safelite as claims administrator were true, and on Count IV, tortious interference with business relationships, to the extent that the claim was based on truthful scripted warnings provided to prospective customers who called Safelite as claims administrator and expressed a preference for Diamond.  We granted summary judgment to Diamond on Count III of Safelite's counterclaim, related to the Robinson-Patman Act.  We denied summary judgment on all other claims and counterclaims.

**Jurisdiction**

This court has jurisdiction over the dispute pursuant to its federal question jurisdiction, 28 U.S.C. § 1331, and supplemental jurisdiction, 28 U.S.C. § 1367. State law applies to claims considered pursuant to supplemental jurisdiction.  United

Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726 (1966) (citing Erie R.R. Co. v. Tompkins, 304 U.S. 64 (1938)).

**I. Motion for Reconsideration**

**A. Legal Standard**

Plaintiff moves for reconsideration of this court's decisions granting summary judgment on counts I, II and IV. "The purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence." Harsco Corp. v. Zlotnicki, 799 F.2d 906, 909 (3d Cir.1985); Max's Seafood Cafe ex rel. Lou-Ann, Inc. v. Quinteros, 176 F.3d 669, 677 (3d Cir. 1999). The movant must demonstrate one of three grounds for such a motion to be granted: (1) an intervening change in controlling law; (2) the availability of new evidence not previously available; or (3) the need to correct a clear error of law or to prevent manifest injustice. Max's Seafood Cafe, 176 F.3d at 677.  A motion for reconsideration is not a proper vehicle merely to attempt to convince the court to rethink a decision it has already made. Glendon Energy Co. v. Borough of Glendon, 836 F. Supp.1109, 1122 (E.D. Pa. 1993).  Such motions may not be used to give a dissatisfied party a chance to "[change] theories and try again," and thus obtain a "'second bite at the apple.'" Bhatnagar v. Surrendra Overseas Ltd., 52 F.3d 1220, 1231 (3d Cir. 1995); see also Ogden v. Keystone Residence, 226 F. Supp. 2d 588, 606 (M.D. Pa. 2002) (finding that "The simple fact that Ogden is unhappy with the result of the April 19, 2001 opinion is an insufficient basis to grant her relief.").

We will address each of the decisions challenged by Diamond in turn.

**B. Lanham Act Claim**

This court granted the defendant summary judgment on plaintiff's claim that Safelite violated the prohibition on false advertising in section 43 of the Lanham Act, 15 U.S.C. § 1125(a)(1), in the way that the company handled calls from policyholders seeking replacement glass. Plaintiff contends that in its decision "the Court ignores or misconstrues evidence that [sic] showing that Diamond has put forward evidence here, which, if viewed in Diamond's favor, raises a genuine issue of material fact." (Doc. 466 at 3). The court, plaintiff claims, did not properly credit evidence demonstrating that Safelite provided false or misleading information about Diamond's services and prices to consumers who phoned the numbers Safelite maintained.

Plaintiff points to no clear error of law or manifest injustice that needs correction. Instead, plaintiff simply argues that evidence was before the court by which jurors could have found for the plaintiff and that the court thus erred in granting summary judgment.[1] This argument restates the summary judgment standard the court used in reaching its decision.[2] See Knabe v. Boury, 114 F.3d

---

[1] Diamond complains that the court did not cite directly to this evidence, but does not say that the evidence was unavailable to the court at the time we rendered the decision. Since the standard for reconsideration addresses the availability of evidence and not the weight that the court assigns the evidence, Diamond's argument is unavailing.

[2] Diamond demonstrates its attempt to reargue the summary judgment decision when it describes various service agreements between Safelite and the Insurance

6

407, 410 n.4 (3d Cir. 1997) (citing FED. R. CIV. P. 56(c)) (finding that granting summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.). By arguing that the court "ignored" or "misconstrued" evidence available to it at the time of its decision, plaintiff simply seeks to reargue the case through a motion for reconsideration. Since a motion for reconsideration is not a proper vehicle for rearguing the case, we will not grant defendants' motion. See, e.g., Bhatnagar, 52 F.3d at 1231 (rejecting an argument for reconsideration because defendant's "motion for reconsideration strikes us as a classic attempt at a 'second bite at the apple.'").

## C. Breach of Contract Claim

Plaintiff disputes the court's finding that Safelite did not breach the agreement between the plaintiff and defendant in the way it processed phone calls and encouraged policyholders to make their claims. Diamond disputes the court's interpretation of the obligations placed on Safelite by the contract, Diamond's

---

companies and argues that the agreements could be taken to mean that Safelite acted as an independent contractor, not as the insurance company in taking calls from policyholders. The court concluded otherwise. Diamond contends that this evidence, which was before the court when we made our decision on summary judgment, "creates a genuine issue of fact as to whether Safelite's handling of calls is literally false, or misleading." (Plaintiff's Brief in Support of Motion for Reconsideration (Doc. 466) at 5 (hereinafter "Plaintiff's Brief")). While such an argument would be entirely appropriate in the summary judgment setting, it merely reiterates what plaintiff had previously argued. As such, the argument does not make reconsideration appropriate.

reasonable expectations for Safelite's performance, and whether Safelite's breached that agreement.

Diamond does not offer any new evidence or new law to support this claim. Instead, in a manner similar to its arguments on the Lanham Act claim, plaintiff points to evidence previously before this court and argues that the court failed properly to credit that evidence in determining that summary judgment for the defendant was proper. See Zarsco v. Zlotnicki, 779 F.2d 906, 909 (3d Cir. 1985) (holding that "where evidence is not newly discovered, a party may not submit that evidence in support of a motion for reconsideration."). As such, plaintiff seeks not to draw the court's attention to a manifest injustice or clear error of law, but instead tries to use a motion for reconsideration as a means to reargue the case. See, e.g., Kitzmiller v. Dover Area Sch., 388 F. Supp. 2d 484, 488 (M.D. Pa. 2005) (finding that "'[a] motion for reconsideration is not to be used as a means to reargue matters already argued and disposed of or as an attempt to relitigate a point of disagreement between the Court and the litigant.'" (quoting Abu-Jamal v. Horn, No. 99-cv-5289, 2001 WL 1609761, *9 (E.D. Pa. Dec. 18, 2001)). Since reargument is not a proper function for a motion to reconsider, we will deny plaintiff's motion for reconsideration in this area.

## D.  Defamation and Tortious Interference

Plaintiff also argues that the court should reconsider its grant of summary judgment to the defendants on Diamond's claims of defamation and tortious

8

interference. Diamond argues that the court erred in finding Safelite's statements to customers were covered by a qualified privilege, and argues that a jury could conclude that there was a genuine issue of material fact as to whether Safelite made false and misleading statements to customers about Diamond that waived the privilege. Safelite points to no new evidence or clear error of law that should disrupt the court's conclusions on these matters. Plaintiff simply reiterates arguments already made. Since a motion for reconsideration should not be used to provide the moving party an opportunity to reargue claims already considered by the court, we will reject plaintiff's argument on this matter. See, e.g., Mayer v. Sewell, No. 01-cv-1762, 2005 WL 3503975 (M.D. Pa. Dec. 21, 2005) (rejecting reconsideration because "Plaintiff once again makes the same arguments he has repeatedly made throughout this litigation and in his post-trial motion and simply disputes the court's disposition of those arguments.").

Plaintiff does argue at least in part that the court made an error of law on the issue of tortious interference. The court concluded that a customer's expressing a preference for Diamond for glass repair work did not create a prospective business relationship. Diamond points to three federal district court cases to argue that in Pennsylvania, interference with a prospective business relationship can occur in settings where a potential customer seemed likely to establish a relationship, even when no contract had been discussed or formed. See Pellegrino Food Prods. Co. v. City of Warren, 136 F. Supp. 2d 391, 408 (W.D. Pa. 2000) (holding that a

9

prospective business relationship requires "something less than a contractual right and more than a mere hope."); CAT Internet Servs, Inc. v. Magazines.com, Inc., No. 00-cv-2135, 2001 WL 8858 (E.D. Pa. Jan. 4, 2001); Toledo Mack Sales & Serv., Inc. v. Mack Trucks, Inc., No-02-cv-4373, 2005 WL 724117 (E.D. Pa. Mar. 29, 2005) (finding summary judgment inappropriate when there was a question of whether potential customers were steered away by defendant's special prices and deals).

No clear error of law exists here.[3]  While plaintiff disagrees with the conclusions arrived at by the court using these legal standards, Diamond does not argue that the court committed clear error by applying the wrong legal standards or that an intervening change in the law occurred.  Doing so would be difficult in such cases, since the legal standards appear to require the court to exercise considered discretion in defining the relation between a prospective customer and a business. Instead, plaintiff contends that the court misapplied the available evidence in determining whether a potential business relationship existed between callers to Safelite's lines and Diamond. Plaintiff's argument, despite its claim of legal error, is thus merely an attempt to reargue a claim that did not convince the court in its original iteration.  Plaintiff urges the court to attach different meaning to the evidence available and considered at the time of the original decision.  For the

---

[3]Indeed, Diamond calls the court's conclusion "reversible error," not "clear error."  An appeals court could find an error reversible by settling an area of law that was contested, or by addressing a question of first impression.  Diamond's choice of "reversible" rather than "clear" error demonstrates why granting the motion for reconsideration would be inappropriate.  (See Plaintiff's Brief at 17).

10

reasons stated above, we will not allow a motion for reconsideration to become a forum for rearguing a decision already handed down. As such, we will deny the plaintiff's motion for reconsideration.

## II. Motion for Certification of Appeal under FED. R. CIV. P. 54(b)

As an alternative to reconsideration, plaintiff requests that the court certify our decision granting summary judgment to the defendant for immediate appeal under FED. R. CIV. P. 54(b).

### A. Legal Standard

Rule 54(b) establishes in pertinent part that "[w]hen more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment." FED. R. CIV. P. 54(b). The purpose of this rule is "'to strike a balance between the undesirability of piecemeal appeals and the need for making review available at a time that best serves the needs of the parties.'" Berckeley Inv. Group, Ltd. v. Colkitt, 455 F.3d 195, 202 (3d Cir. 2006) (quoting Allis-Chalmers Corp. v. Philadelphia Elec. Co., 521, F.2d 360, 363 (3d Cir. 1975)). When granting such relief, a court should generally "clearly articulate the reasons and factors underlying its decision to grant 54(b) certification." Allis-Chalmers, 521 F.2d at 364; but see Carter v. City of Philadelphia, 181 F.3d 339,

11

345-46 (3d Cir. 1999) (finding that "Allis-Chalmers's requirement of a statement of reasons in every case stands not as a jurisdictional prerequisite but as a prophylactic means of enabling the appellate court to ensure that immediate appeal will advance the purposes of the rule.  It follows that the absence of an exploration by the district court does not pose a jurisdictional bar when the propriety of the appeal may be discerned from the record.").

To certify an appeal, a court must find that "(1) there has been a final judgment on the merits, i.e., an ultimate disposition on a cognizable claim for relief; and (2) there is 'no just reason for delay.'" Berckeley, 455 F.3d at 202 (quoting Curtiss-Wright Corp. v. General Electric Co., 446 U.S. 1, 7-8 (1980)); see also Digital Equip. Corp. v. Desktop Direct, 511 U.S. 863, 867 (defining a final judgment as one that "'ends the litigation on the merits and leaves nothing more for the court to do but execute the judgment.'") (quoting Catlin v. United States, 324 U.S. 229, 233 (1945)). Once having established that a final decision on the merits was made, "district courts are to consider judicial administrative interests, as well as the equities involved in the case" in deciding whether to allow the appeal. Berckeley, 445 F.3d at 202.  Among the factors courts consider are "(1) the relationship between the adjudicated and unadjudicated claims; (2) the possibility that the need for review might or might not be mooted by future developments in the district court; (3) the possibility that the reviewing court might be obliged to consider the same issue a second time; (4) the presence or absence of a claim or counterclaim which could result in a set-off

12

against the judgment made final; (5) miscellaneous factors such as delay, economic and solvency considerations, shortening the time of trial, frivolity of competing claims, expense, and the like." Id. at 203 (quoting Allis-Chalmers, 521 F.2d at 364).

## B. Discussion

As a preliminary matter, we note that our decision to grant summary judgment qualifies as final judgment for those claims affected by the decision. We note again that summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that *the moving party is entitled to judgment as a matter of law*. See Knabe, 114 F.3d at 410 n.4 (citing FED. R. CIV. P. 56(c)). The effect of summary judgment on those claims, then, is to leave nothing for the court to do but enter judgment for the prevailing party. The first condition for a grant of immediate appealability under Fed. R. Civ. P. 54(b) has therefore been met for the claims in this case dismissed by summary judgment.[4] See Curtis-Wright Corp. v. General Electric Co., 446 U.S. 1, 7 (1980) (defining a final judgment as "'an ultimate disposition of an individual claim entered in the course of a multiple claims

---

[4] We decline to adopt defendant's position that the shared facts of the dismissed and remaining claims mean that the dismissed claims are not final and are thus unappealable. We note that Rule 54(b) does not prohibit certification of claims that share the same set of facts or similar legal standards, and that courts have not *per se* foreclosed the certification of claims that share facts or legal standards. Instead, courts have found the fact that non-dismissed claims that share facts with dismissed ones is a strong factor against allowing immediate review. See, e.g., Kersey v. Dennison Manufacturing Co., 3 F.3d 482, 487 (1st Cir. 1993) (holding that "substantial prospect of contextual overlap between dismissed claims and unadjudicated claims counsels strongly against Rule 54(b) certification.").

13

action.'") (quoting Sears, Roebuck & Co. v. Mackey, 351 U.S. 427, 436 (1956)). We therefore must determine whether there is "'no just reason for delay'" in allowing the appeal.

In making that decision, we pay particular attention to the relationship between the claims dismissed by summary judgment and those which remain after our decision. We find that the remaining claims are closely related to the dismissed claims, and that our desire to avoid piecemeal and repetitive appeals is a compelling reason not to certify an appeal pursuant to FED. R. CIV. P. 54(b). See, e.g., Kersey v. Dennison Manufacturing Co., 3 F.3d 482, 487 (1st cir. 1993) (holding that "the district court is to consider the strong judicial policy disfavoring piecemeal appellate review [citations omitted] by carefully comparing the dismissed and the unadjudicated claims for indications of substantial overlap to ensure that the appellate court is not confronted in successive appeals with common issues of law or fact, to the detriment of judicial efficiency."). The claims in this case arise out of the contracts made between Diamond and Safelite, and the way that the companies implemented those agreements. Whether reviewing a claim of disparagement, breach of contract, tortious interference with business relationships, violation of consumer protection statutes, or false advertising, an appellate court would have to evaluate the network agreements, the call scripts developed by Safelite and the Insurance Companies, and the actions Safelite took in implementing those documents. The remaining claims against Diamond include counts of defamation,

unfair competition, intentional interference with business relations, state deceptive trade practices claims and breach of contract claims.  Safelite faces counts based on the truthfulness of scripted claims in statements to policyholders.  In any appeal subsequent to the proposed one, an appellate court would have to analyze the same documents and apply the same sets of facts, using substantially the same legal standards in appeals subsequent to the present proposed one.  The interests of judicial efficiency and avoidance of piecemeal and duplicative appeals therefore requires us to decline to certify an immediate appeal in this case.

As an additional reason for certifying appeal, Diamond points out that without certification the likely result of the court's decision is "a lengthy trial, an appeal and a retrial that will certainly require retrying issues from the first trial."  (Plaintiff's Brief at 19).  Settlement talks, which could bring this protracted litigation to an amicable close, are unlikely to proceed, Diamond argues, until an appeals court determines whether the company's "most substantial claims" should be reinstated.  (Id. at 20).

Our concern with avoiding piecemeal and repetitive appeals could be overcome if we were convinced that practical considerations like the possibility of settlement–and thus no need to take another appeal at all–would be advanced by granting Diamond's request for immediate appeal.  See Curtis, 446 U.S. at 8 n.2 (finding that "if the district court concluded that there was a possibility that an appellate court would have to face the same issues on a subsequent appeal, this might perhaps be offset by a finding that an appellate resolution of the certified

15

claims would facilitate a settlement of the remainder of the claims."). While the most just outcome of this case may be settlement, and while we consider carefully plaintiff's contention that the best hope of settlement would come with an immediate appeal, we do not find that this factor outweighs other factors balancing against certifying the issue for immediate appeal. Indeed, while plaintiff contends that settlement may be possible with an immediate appeal, we note that such an appeal may result in an a judgment that upholds our decision and leaves the plaintiff in no better negotiating position than before. In such a situation, settlement may be even less likely.[5] Plaintiffs initiated their action in 2002, and a swift resolution of the remaining claims through trial better serves the needs of justice and judicial efficiency than would awaiting the outcome of an appeal. We therefore find that the factors against granting appeal under FED. R. CIV. P. 54(b) outweigh those in favor of such a grant, and we will decline plaintiff's request to certify an immediate appeal of our decision on summary judgment in this case. An appropriate order follows.

---

[5]We also note that Diamond's fear that failing to certify an appeal might result in a lengthy trial, followed by an appeal and retrial, is possible in every case of this type. Indeed, every action that does not settle before trial faces this possibility; the Federal Rules of Civil Procedure prescribe exactly that course of action. As such, we will not consider the possibility that a case may follow the procedure established for an action in federal district court to be a strong factor weighing in favor of allowing an immediate appeal.

16

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DIAMOND TRIUMPH AUTO GLASS, INC.,** | : | No. 3:02cv514 |
| Plaintiff | : | (Judge Munley) |
| v. | : | |
| **SAFELITE GLASS CORPORATION,** | : | |
| Defendant | : | |

::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## ORDER

**AND NOW**, to wit, this 11th day of January 2007, the plaintiff's motion for reconsideration (Doc. 464) is hereby **DENIED.**

                                        **BY THE COURT:**


                                        **s/ James M. Munley**
                                        **JUDGE JAMES M. MUNLEY**
                                        **United States District Court**